# Wytheville.

## Isaac Levine v. City of Lynchburg.

June 18, 1931.

Present, Campbell, Holt, Epes, Hudgins and Gregory, JJ.

The opinion states the case.

*Broun & Price* and *Paul H. Coleman,* for the plaintiff in error.

*W. T. Spencer, Jr.,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

Isaac Levine was, in September last, tried under the prohibition ordinance of the city of Lynchburg, which, in so far as this proceeding is concerned, is identical with the State prohibition law. He was charged with transporting ardent spirits and was sentenced to four months on the State convict road force and fined $150.00.

On the morning of June 4, 1930, Officer Wood, of the Lynchburg police force, learned that certain men were endeavoring to push an automobile along Rivermont avenue, in said city, near the entrance of Randolph-Macon Woman's College, and that this car seemed to be loaded with liquor. He

went at once to the place indicated and found there a Hudson sedan parked on the side of that street, headed towards the city. Rivermont avenue connects with the highway from Roanoke to Lynchburg. This car had in it 140 gallons of whiskey, and was, as shown by subsequent investigation, registered in the name of Levine.

Lawrence Cofer works at the college pharmacy and delivers packages for that drug store. While so engaged, and somewhere around 8:30 or 9 o'clock, he happened to be near where this automobile was stalled. Someone from it called to him for help, and as soon as his duties permitted him to do so, in answer to that call, he went over and undertook to shove this car out of the way. He has identified the defendant as the man who seemed to be in charge. It could not be operated under its own power because its batteries were exhausted.

Lester Burns, with J. C. Noel, ran a city truck which chanced also to be in that neighborhood that morning. He said that a man came over to his truck and asked them to help him push his car to see if they could start it. He did help. He identifies Levine as the man who was asking aid.

Levine's reputation as a violator of the prohibition laws of this State is bad.

This is the Commonwealth's case. It rests upon:

1. The testimony of witnesses.

2. Upon the record which shows that title to the confiscated car was in the defendant.

That this Hudson car was loaded with liquor is not in dispute, but the identity of the man in charge of it is.

Noel, who was working with Burns, has testified for the defendant. He also aided in the attempt to start this car. While his evidence is not as positive as it might be, he was of opinion that Levine was not the man in charge of it.

The defendant has testified on his own behalf. He said that he was not in Lynchburg on that occasion, but was at his home in Roanoke, and first learned of the seizure through a 'phone

message which came to him that morning from a friend of his, Mr. Bess. He further said that he did not own this car, but had sold it about three months before then to one Frank Willis, who had since that time been in exclusive control of it, although there had been no formal transfer of title because Willis had not yet paid him the full amount of the purchase price. His explanation of the 'phone call from Bess is that Bess knew that he had once owned it and thought that he would be interested.

J. B. Kelly is a brother-in-law of Levine's and lives with him. He said that Levine was at home on the morning in question when this 'phone call came to him. He further said that he was under the impression that Bess' information came through Willis and probably through a 'phone call also. Mrs. Levine has also testified that her husband was then at home.

Mr. Ed. Lane was an employee at this college pharmacy. He said that on the morning of the seizure someone came to that store and telephoned for help, and that this man was not Levine.

There are a number of assignments of error, but for reasons which will appear it is necessary that we consider in detail only the first three.

It is said that the court erred "In refusing to allow counsel for petitioner to confront the witnesses, Cofer and Burns, with Frank Willis for the purpose of proving that they had mistakenly identified the defendant, and excluding this evidence from the consideration of the jury."

During the progress of Cofer's examination this occurred:

"Mr. Price: Mr. Sergeant, will you ask Mr. Frank Willis to come in here, please?

(Mr. Willis comes in the courtroom.)

"Mr. Spencer: What are you going to ask him? You are bringing witnesses into court who have been excluded.

"Mr. Price: Now you may go back, Mr. Willis, please, sir.

(Mr. Willis leaves the room.)

"Mr. Price: I am going to ask him a question now, your honor.

"Q. You saw this man that just came in here?

"A. Yes, sir.

"Q. I want you to tell the jury whether or not that is not the man you talked to down there in front of the college gate?

"A. No, sir.

"Q. Did you ever see this man before?

"A. No, sir.

"The court: What would that have to do with it, Mr. Price?

"Mr. Price: Well, if I can prove that this man was not driving the car, and I can strengthen my case by proving that that man was driving it—

"The court: Are you going to prove that that man was driving—how are you going to prove that that man was driving it?

"Mr. Price: I am going to undertake to prove that this man was not driving it."

This evidence the court excluded. Thereupon, counsel for the accused, for the purpose of making up this record, asked this question:

"Instead of being Ike Levine with whom you had the conversation at the college gate that morning this liquor was seized, was it not this man Frank Willis who has just been brought in the court?"

The witness, had he been permitted to answer, would have said:

"There is the fellow over there I talked to (pointing to defendant)."

When Burns was being cross-examined, Mr. Price said:

"If your honor please, I would like to cross-examine him the way I did the other man, by bringing Mr. Willis in here.

"The court: You can't bring in a comparison of writing in a forgery case—how are you going to bring in a comparison of people in a case like this?

"Defendant excepts."

Counsel did not undertake to put in the record what the witness's answer would have been. It is reasonable to believe that he would have answered as Cofer did.

██ ██ Whatever his answer might have been, it should appear in the record, and does not.

"In order to show that the trial court erred in rejecting an offer of evidence, or in excluding evidence, the bills of exceptions must show the materiality of the evidence tendered. Where a question is asked, and the witness is not permitted to answer, the bill of exceptions must show what the party offering the witness expected or proposed to prove by him. If the witness is permitted to answer, and the answer is excluded, it should show what the answer was. This is necessary because it may be that the witness had no knowledge upon the subject, or what he knew was irrelevant or immaterial. A judgment will not be reversed because evidence has been excluded or rejected by the trial court unless its materiality is made to appear." *Union Central Life Ins. Co.* v. *Pollard,* 94 Va. 146, 26 S. E. 421, 423, 36 L. R. A. 271, 64 Am. St. Rep. 715; *Owens* v. *Commonwealth,* 147 Va. 624, 136 S. E. 765.

██ Moreover, there was no proper foundation laid for the introduction of this testimony. The court asked counsel a point-blank question: "Are you going to prove that that man (Willis) was driving?" and to this there was no reply. Mr. Price contented himself with saying that he would prove that his client was not so engaged. The defendant could have shown that Willis was driving the car, but he had no such purpose, as plainly appears from Price's statement, and it was for this purpose only that it was competent. He might, with equal propriety, have in long procession called every man in the courtroom and asked: "Is that not the man you talked to in front of the college gate?" And so because of this failure to avow its purpose, and because it appears from Cofer's examination positively and from Burns' by inference that the

man they saw was Levine and not Willis, we hold that this first assignment of error is without merit.

The next deals with exclusion of certain evidence sought to be elicited from J. B. Kelly and T. K. Reed. This evidence, excluded by the court, was to the effect that the accused did not own this Hudson sedan, but that its real owner was Willis, and that it had been in his exclusive possession for three months antedating the seizure.

If Levine was in charge of this car he is guilty, and he is also guilty if it was used to transport this liquor with his knowledge and consent, whether he was in charge of it or not, and it is perfectly true that its ownership is not in direct issue here.

. If his identification by the Commonwealth's witnesses be taken as conclusive, this evidence should have been excluded, but it cannot be taken as conclusive unless that tendered on behalf of the accused, to the effect that he was then in Roanoke, is wholly disregarded. Here ownership and possession do have some probative value and so should have been admitted. Its weight was for the jury, its admissibility for the court.

Suppose this car had been found loaded with liquor and deserted. Naturally, the Commonwealth's first line of investigation would have been to ascertain whose car it was. Registry of title would have shed light upon that inquiry. Suppose its driver had attempted to escape and his identification had been uncertain. Like inquiry would, in all probability, have been at once instituted. In such circumstances, Levine also might have shown that the car was not his. Levine's identification is still in doubt unless we assume, as a matter of law, that his witnesses have not told the truth and this, of course, we cannot do. The fact that Levine did or did not own this car and did or did not have it in his possession has some probative value, when we come, in the conflict of evidence, to identify the man actually in charge of it.

██ Evidence which adds force and effect to other evidence is competent. *Norfolk & W. R. Co.* v. *Phillips' Adm'x,* 100 Va. 362, 41 S. E. 726.

In Wigmore on Ev., vol. 1, sec. 10, it is said:

"All facts having rational probative value are admissible unless some specific rule forbids. * * *

"This axiom expresses the truth that legal proof, though it has peculiar rules of its own, does not intend to vary without cause from what is generally accepted in the rational processes of life, and that of such variations some vindication may, in theory, always be demanded. In other words, in the system of evidence, the rules of exclusion are, in their ultimate relation, rules of exception to a general admissibility of all that is rational and probative.

"This principle, then, does not mean that anything that has probative value is admissible; this would be an entire misconception. The true meaning is that everything having a probative value is *'ipso facto'* entitled to be assumed to be admissible, and that, therefore, any rule of policy which may be valid to exclude it is a superadded and abnormal rule."

He then cites with approval this observation of Chief Justice Cockburn (*R.* v. *Birmingham,* 1 B. & S. 763, 121 Eng. Rep. 897), so entirely in harmony with modern tendencies:

"People were formerly frightened out of their wits about admitting evidence unless juries go wrong. In modern times we admit the evidence and discuss its weight."

In certain contingencies this evidence has probative value and is admissible. Should the jury be satisfied that the identification of Levine as the man in charge of this stalled car is complete, then it has no value. If they are in doubt on that subject, it is worth something. Its weight is with the jury.

For reasons stated, there is error in its exclusion.

Other assignments deal with matters which will not, in the ordinary course of affairs, again require consideration.

*Reversed and remanded.*