𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡

## Peacock Buick, Inc.

v.

## Jane Enid Durkin

April 24, 1981.

Record No. 790530.

Present: All the Justices.

*Zachary B. Cotner* for appellant.

*H. Wise Kelly, III* (*Kelly, Louk, Lawson & Kelly,* on brief), for appellee.

STEPHENSON, J., delivered the opinion of the Court.

Jane Enid Durkin sued Peacock Buick, Inc., to recover both compensatory and punitive damages resulting from Peacock's alleged unlawful conversion of her automobile. A jury returned a verdict for Durkin and awarded her compensatory damages of $2,500.00 and punitive damages of $7,500.00. Peacock moved the court to set aside the verdict and to enter judgment for it, or, in the alternative, to grant Peacock a new trial on the issue of punitive damages. The trial court overruled the motions, but remitted the compensatory damage award to $2,100.00. Judgment was thereafter entered on the verdict as modified by the court.

These are the dispositive issues raised by this appeal:

I. Whether the court erred by permitting Durkin's counsel to examine Peacock's salesman, Jack Glasser, regarding unfair business practices in the automobile trade.

II. Whether the question of punitive damages was improperly submitted to the jury.

In early January, 1978, Durkin, while shopping for a new car, went to Peacock where she met its salesman, Jack Glasser. Glasser quoted her a price, in writing, which included a trade-in allowance of $3,500.00 on Durkin's car.

After comparing other dealers' proposals, Durkin returned to Peacock and entered into a contract for the purchase of a 1978 model Buick automobile. The sales contract, prepared by Glasser, contained the price previously quoted to Durkin, including the trade-in allowance of $3,500.00. Since the car had to be ordered, Durkin paid a deposit of $100.00 and left with the understanding that Glasser would call her when the car arrived. Glasser took the contract to Russell Creekmore, Peacock's sales manager, who ordered the car.

On February 21, 1978, Durkin went to Peacock to take delivery. She delivered the trade-in vehicle to Peacock and completed all documents necessary for delivery of the new car. Peacock accepted Durkin's check for $3,427.00, and Durkin was given the keys to the new automobile and copies of all documents. License tags were transferred from her old to her new car and an inventory sticker was placed on the window of the trade-in.

Upon leaving Peacock in her new automobile and driving it a short distance, Durkin noticed the gas gauge registered empty. Fearing she would run out of gasoline, she returned to Peacock to acquire some. Peacock sent a mechanic out in the new car to fill the tank. While waiting for his mechanic to return, Creekmore discovered a $1,000.00 "error" in the transaction. Creekmore contended that the trade-in value should have been $2,500.00, rather than $3,500.00. Creekmore informed Durkin that she could not retain the new car unless she paid him an additional $1,000.00. While attempting to explain the discrepancy to Durkin, Creekmore became angry and Durkin began to cry. Creekmore called for Peacock's President, Michael Peacock, and, upon being advised of the situation by Creekmore, Mr. Peacock told Durkin that unless she paid the $1,000.00, he would retain the automobile. Durkin informed Mr. Peacock that Peacock was acting illegally and that she was going to call her lawyer. Mr. Peacock appeared to "panic" and told Durkin not to get a lawyer because litigation would take two years and by the time the matter got through the courts it would cost her more than it was worth.

When Durkin refused to pay the additional money, Peacock took possession of the keys to the new automobile from the mechanic and, over Durkin's protests, kept the new car and returned the checks and the old car to Durkin.

## I.

The court, over Peacock's objection, permitted Durkin's counsel to question Glasser about certain unfair business practices known in the automobile trade as "low balling", "high balling", and "bumping".[1] Peacock contends that this evidence was irrelevant and highly prejudicial. Glasser's testimony demonstrated that he was thoroughly conversant with these terms, although he denied having ever used the practice himself.

A material issue in this case was whether Peacock's appraisal of Durkin's trade-in car was an innocent "mistake" or a willful or wanton act. Glasser conceded that the circumstances of the transaction were consistent with what would have happened if Durkin were "lowballed". It was for the jury to decide if this was indeed the case. In doing so, the jury had the right to know that "lowballing" is sometimes practiced in the automobile trade.

█ Evidence having rational probative value and which adds force and effect to other evidence will be admitted unless some other rule requires its exclusion. *Levine* v. *Lynchburg*, 156 Va. 1007, 1014, 159 S.E. 95, 97 (1931). "It is obvious therefore that a great deal must necessarily be left to the discretion of the court of trial, in determining whether evidence is relevant to the issue or not." *Early* v. *Wilkinson & Hunt*, 50 Va. (9 Gratt.) 68, 77 (1852). We cannot say, in view of all the facts and circumstances present, that the trial court abused its discretion.

## II.

█ A more important issue presented relates to the law governing the award of punitive damages in a case of unlawful conversion and whether the evidence in the present case supports such an award.

As a general rule, an award of punitive damages is proper only when actual malice, or malice in fact, has been established by the evidence. *Jordan* v. *Sauve and Koons*, 219 Va. 448, 452, 247 S.E.2d 739, 742 (1978); *Lee* v. *Southland Corp.*, 219 Va. 23, 27, 244 S.E.2d 756, 759 (1978); *F.B.C. Stores, Inc.* v. *Duncan*, 214 Va. 246, 252, 198 S.E.2d 595, 599 (1973); *Gaut* v. *Pyles*, 212 Va. 39, 42, 181

---

[1] Apparently, these terms describe the practice of some unethical dealers who will give a high trade-in assessment to a customer. The customer thereafter endeavors to obtain a better deal from competitors of the dealer. Unable to do so, the customer returns, and, at this point, the dealer "bumps", or increases, the price upon the detection of an "error". The customer, not wanting to do a second round of comparison shopping, closes the deal with the "lowballer" despite the error.

S.E.2d 645, 647 (1971); *Giant of Virginia* v. *Pigg*, 207 Va. 679, 685, 152 S.E.2d 271, 277 (1967). Cf. *Fleming* v. *Moore*, 221 Va. 884, 275 S.E.2d 632 (1981). Legal malice is not sufficient.[2] In *Lee* we said that actual malice may be shown if the defendant's actions were "prompted by ill will, malevolence, grudge, spite, wicked intention or a conscious disregard of the rights of another." 219 Va. at 27, 244 S.E.2d at 759. An examination of the jury instructions given by the trial court shows that they conform to the general rule which we hold applicable here.[3]

Appellant contends that it was error for the trial court to refuse an instruction stating that punitive damages can be awarded only when the defendant has a guilty or evil intent.[4] We are of opinion that the

---

[2] Legal malice is a presumption that arises in certain instances. For example, in actions for malicious prosecution, false arrest and false imprisonment, legal malice will be presumed from a showing of the lack of probable cause.

[3] *Instruction 3.* Damages are of two types: (1) Compensatory Damages; which are awarded as compensation for pecuniary loss and recompense for the injury suffered; (2) Punitive Damages; which are something in addition to full compensation, not given as the plaintiff's due, but as punishment to the defendant and as a warning and example to deter him and others from committing like wrongs.

And if from the evidence and the other instructions of the Court you find your verdict in favor of the plaintiff, then in addition to compensatory damages, if you believe from a preponderance of the evidence that the defendant acted wantonly, oppressively, or with such recklessness as evinced a conscious disregard of the rights of others, or with such malice as implied a spirit of mischief, or criminal indifference to civil obligations, you may award the plaintiff such additional sum as punitive damages as in your own opinion are called for by the circumstances of the case.

. . .

*Instruction H.* Exemplary or punitive or vindictive damages involves the blending of the interests of society in general with those of the aggrieved individual in particular. Such damages are awarded by way of punishment to the offender and as a warning to others or by way of example. In order to recover exemplary damages or punitive damages, there must be actual damage shown. In other words, you would have to first determine that there had been general damage or compensatory damage before you would be entitled to return a judgment for punitive damages. In order to warrant a recovery for exemplary damages, there must be some element of malice. Where an act has been done in good faith, although it may result in serious injury to the other party, there can be no recovery for exemplary damages.

[4] The trial court deleted the following language from Instruction H, as offered by the appellant, when instructing the jury:

A guilty intent on the part of the defendant is essential to charge it with exemplary or punitive damages. . . . If the defendant acted under a mistaken sense of duty and without an evil intent, it is not a case of exemplary damages. . . .

trial court was correct in refusing such an instruction. "Guilty intent" and "evil intent" are vague and nebulous standards, and the use of such terms is not in conformance with Virginia law.

 We next consider whether the evidence is sufficient to support a finding of actual malice. In view of the jury's verdict, all the evidence and the reasonable inferences to be drawn therefrom shall be considered in the light most favorable to Durkin. *Clayton* v. *Taylor,* 193 Va. 555, 557, 69 S.E.2d 424, 426 (1952). When so viewed, we are of opinion that the award of punitive damages is amply supported by the evidence.

As noted previously, the jury reasonably could have inferred that Peacock embarked on a scheme to have Durkin return after shopping with its competitors by placing an excessive value on her trade-in and claiming a mistake when she did, in fact, return. However, aside from such an inference, there was other evidence from which the jury fairly could have concluded that Peacock's action was prompted by "a conscious disregard of the rights" of Durkin. Notwithstanding the fact that the sale was consummated, the new car had been delivered and title had passed to Durkin, the evidence is undisputed that Peacock took the law into its own hands and willfully disregarded Durkin's rights. Its action in this regard was oppressive, ruthless and overbearing, and we hold that the verdict awarding punitive damages to Durkin was proper.

Accordingly, the judgment of the trial court will be

*Affirmed.*