911 F.2d 721
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
C & C DIESEL SERVICE, INC., Plaintiff-Appellee,
v.
B & P TOWING, INC., Defendant-Appellant,
and
John Does, Defendants.
 No. 89-1004.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 2, 1989.
Decided Aug. 6, 1990.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Chief District Judge. (CA-88-643-A)
 Edward L. Genn, Brown, Genn, Brown & Karp, North Bethesda, Md., for appellant.
 John L. Martin, Arthur & Speed, Ltd., Arlington, Va., for appellee.
 E.D.Va.
 AFFIRMED.
 Before CHAPMAN and WILKINS, Circuit Judges, and HARRISON L. WINTER,* Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 B & P Towing, Inc. appeals the denial of its motion for a new trial and/or amendment of judgment following a directed verdict on the claim of conversion by C & C Diesel Services, Inc. and a jury's subsequent award of compensatory and punitive damages. B & P claims that the district court erred by granting C & C Diesel's motion for a directed verdict and in several rulings it made excluding certain witnesses and evidence. Additionally, B & P challenges the jury award of compensatory and punitive damages. We affirm.
 
 I.
 
 2
 C & C Diesel's suit stems from an accident that occurred in northern Virginia on the Capital Beltway on March 9, 1988. A convoy of three C & C Diesel tractor-trailer trucks, all exceeding Virginia height restrictions, was proceeding under a Beltway overpass when an empty shipping container on the third truck struck the overpass and fell onto the highway, blocking two lanes of traffic. A crew from Danis Corporation that was working nearby used a crane to remove the fallen container from the highway. The Danis crew, with the assistance of B & P employees who had arrived shortly after the accident, then loaded the container onto a lowboy trailer owned by B & P.[1] In addition to the lowboy trailer, B & P sent other equipment, including three wreckers and a pickup truck, to the scene of the accident.
 
 
 3
 Once the Beltway had been cleared, B & P employees informed one of the C & C Diesel drivers that his truck "was being impounded by the State of Virginia" and the B & P employees then began removing a bumper from the truck so it could be towed to a nearby storage lot. The driver asked Virginia State Police troopers if they had ordered that the trucks be towed or impounded. The troopers denied ever issuing such instructions. With the approval of the troopers, the towing process was halted and the C & C Diesel drivers drove the trucks from the Beltway to the storage lot. There, the drivers planned to transfer the containers to lowboy trailers so their trucks would meet Virginia height restrictions and they could continue their trip.
 
 
 4
 The C & C Diesel drivers parked the trailers at the storage lot and drove the tractors to B & P's main office to pay for the services rendered at the scene of the accident. Once the drivers parked the tractors in B & P's parking lot, B & P employees closed and locked the gate. After waiting for two to three hours, the C & C Diesel drivers were presented with an unitemized statement in the amount of $6,325, which included $2,500 for the crane services provided by Danis. Unable to pay this amount, the drivers telephoned Calvin Lynch, the owner of C & C Diesel. Lynch then telephoned Nelson Pemberton, owner of B & P, and offered B & P the trailers as collateral if B & P would release the tractors so his drivers could obtain lowboy trailers and continue their trip. Pemberton refused. Lynch then spoke with the Danis project manager who agreed to reduce the amount of Danis' charge. When Lynch advised Pemberton of this, Pemberton stated that C & C Diesel must pay the entire $6,325. Lynch was unable to pay this amount or to obtain a bond that would have allowed C & C Diesel to recover the trucks from B & P. Approximately three weeks later, after borrowing $10,000, Lynch paid the amount charged by B & P, which B & P had increased to $13,675.
 
 
 5
 C & C Diesel then brought suit in district court, alleging trover and conversion, breach of implied contract, trespass to chattels, and civil conspiracy. It sought relief in the form of compensatory and punitive damages. B & P's primary defense to the conversion claim was that C & C Diesel was illegally operating its trucks on Virginia's highways and thus B & P's exercise of authority over the trucks, allegedly pursuant to the direction of Virginia State Police, was lawful. It reasoned that because of the alleged approval of the police officers, the services rendered at the scene of the accident created statutory and equitable liens over C & C Diesel's property. B & P sought to defend against the plea for punitive damages by demonstrating that its statement was not excessive and was issued in good faith.
 
 
 6
 During pretrial proceedings, the district court (1) granted C & C Diesel's motion in limine prohibiting any testimony on the cause of the accident as not relevant, including testimony that C & C Diesel's trucks exceeded the Virginia height restrictions, (2) granted C & C Diesel's motion to quash subpoenas that B & P had issued to C & C Diesel's former attorneys, and (3) excluded B & P's proposed expert witnesses because they were not identified until after discovery had ended.
 
 
 7
 A towing expert testified at trial that the amount of B & P's charge was excessive. Lynch also testified and during cross-examination, counsel for B & P attempted to ask about his failure to obtain a bond.[2] The district court excluded testimony on the bond as not relevant.
 
 
 8
 At the close of B & P's case, the district court granted C & C Diesel's motion for a directed verdict on the conversion claim and submitted the case to the jury only for purposes of assessing compensatory and punitive damages. The court dismissed C & C Diesel's other claims. The jury awarded C & C Diesel $43,625 in compensatory damages and $35,000 in punitive damages.
 
 II.
 A.
 
 9
 During discovery, B & P issued subpoenas to C & C Diesel's former attorneys, ostensibly because they were involved in attempting to secure the bond and could perhaps explain the reason C & C Diesel failed to promptly obtain one. In response, C & C Diesel invoked the attorney-client privilege and, alternatively, argued that the statements of C & C Diesel's attorneys would be repetitive and not relevant. The district court agreed with C & C Diesel on both grounds.
 
 
 10
 Although the bond discussions between C & C Diesel and its former attorneys were arguably privileged, we need not address that issue because the decision to quash the subpoenas may be affirmed on an alternate ground. Before this court, B & P argued that the requested testimony related to liability and punitive damages. However, it never made that argument before the district court and still cannot describe with any degree of specificity what the testimony would have added or what relevance it would have had to any defense to the conversion claim or to the plea for punitive damages. Consequently, we find no prejudice in the decision to quash the subpoenas. See Fed.R.Evid. 103(a) (reversal for erroneous evidentiary rulings is not warranted unless "a substantial right of the party is affected").
 
 B.
 
 11
 B & P next contends that it was prejudicial error to exclude its proffered expert witnesses because they were not identified until after the discovery cut-off date. Appellate courts have routinely upheld, as within the discretion of a district court, the exclusion of witnesses and evidentiary exhibits based on a party's failure to comply with discovery deadlines. See, e.g., Adalman v. Baker, Watts & Co., 807 F.2d 359, 369 (4th Cir.1986); Lirette v. Popich Bros. Water Transp. Inc., 660 F.2d 142, 145 (5th Cir.1981). Only in cases when the evidence was essential, or the exclusion resulted in fundamental prejudice, have courts reversed such orders. See, e.g., Murphy v. Magnolia Elec. Power Ass'n, 639 F.2d 232, 235 (5th Cir.1981). Here, the expert testimony was not relevant to the issue of liability. It was somewhat relevant to the issue of punitive damages because the experts were prepared to testify that the amount of B & P's statement was reasonable. We cannot say, however, that exclusion of this testimony constituted fundamental prejudice.
 
 C.
 
 12
 Additionally, B & P challenges three evidentiary rulings by the district court, (1) that C & C Diesel's expert witness was qualified, (2) that Lynch's testimony regarding the bond "wasn't relevant," and (3) that questions by B & P's counsel regarding Lynch's presence when his drivers were obtaining permits were trivial and thus were not relevant. At trial, however, B & P never objected to the first and third rulings and we see no reason to depart from the rule that objections not raised below cannot be raised on appeal. See Fed.R.Civ.P. 46; e.g., Brookhaven Landscape & Grading Co. v. J.F. Barton Contracting Co., 676 F.2d 516, 523 (11th Cir.1982). As to the second ruling, assuming the objection was well taken, B & P has failed to demonstrate prejudice resulting from this ruling. See Fed.R.Evid. 103(a).
 
 III.
 
 13
 In Virginia, conversion consists of "[a]ny distinct act of dominion wrongfully exerted over the property of another, and in denial of his rights, or inconsistent therewith." Universal C.I.T. Credit Corp. v. Kaplan, 198 Va. 67, 76, 92 S.E.2d 359, 365 (1956) (quotation omitted); see also Acorn Structures, Inc. v. Swantz, 846 F.2d 923, 926 (4th Cir.1988) (quoting Universal C.I.T.). B & P contends that its exercise of authority was not wrongful because it possessed statutory and equitable liens over C & C Diesel's trucks. After a careful review of the briefs, the record, and Virginia law, we conclude that this argument is without merit and thus the directed verdict on the issue of liability for conversion was proper.
 
 IV.
 
 14
 B & P contends that the jury's award of compensatory damages was not supported by the evidence and that the issue of punitive damages should not have been submitted to the jury because actual malice by B & P was not established by C & C Diesel.[3]
 
 
 15
 In reviewing the jury's verdict, we note that the evidence must be viewed in the light most favorable to C & C Diesel, and it must be given " 'the benefit of all inferences which the evidence fairly supports.' " Cooper v. Dyke, 814 F.2d 941, 944 (4th Cir.1987) (quoting Continental Ore Co. v. Union Carbide & Carbon Co., 370 U.S. 690, 696 (1962)). We conclude that there was sufficient evidence to support the jury's award of $43,625 in compensatory damages. Lynch testified that during the three-week period that its trucks were held, C & C Diesel paid a total of $625 to its drivers and suffered a net revenue loss of $13,296. Additionally, it incurred a $500 interest expense on the $10,000 that Lynch borrowed to pay the amount charged by B & P. C & C Diesel's expert witness testified that a reasonable charge for the services rendered by B & P would have been $2,500 to $3,000 rather than the $13,675 actually paid. And, finally, Lynch testified that because he was unable to use the trucks during the period B & P held them, C & C Diesel lost a lucrative contract with one of its regular customers, resulting in future revenue losses of $80,000 per year. Viewing the evidence in the light most favorable to C & C Diesel, it was sufficient for a jury to reach an award of damages in the amount of $43,625.
 
 
 16
 In Virginia, "[a]s a general rule, an award of punitive damages is proper only when actual malice ... has been established by the evidence." Peacock Buick, Inc. v. Durkin, 221 Va. 1133, 1136, 277 S.E.2d 225, 227 (1981). We have stated that "conduct which is in conscious disregard of the rights of others and is wanton and oppressive may be the equivalent of actual malice." National Carloading Corp. v. Astro Van Lines, Inc., 593 F.2d 559, 565 (4th Cir.1979) (applying Virginia law). More significantly, the Virginia Supreme Court has held, in a case involving the wrongful conversion of an automobile, that a jury could reasonably infer malice and " 'a conscious disregard of the rights of another.' " See Peacock Buick, 221 Va. at 1137, 277 S.E.2d at 227 (quoting Lee v. Southland Corp., 219 Va. 23, 27, 244 S.E.2d 756, 759 (1978)). We conclude that a jury could have inferred from the evidence that B & P consciously disregarded the rights of C & C Diesel. There was evidence that B & P sent excessive equipment to the scene of the accident, that the amount of B & P's statement was unreasonable, and that B & P sought to exercise its control over C & C Diesel's vehicles to coerce payment of the statement.
 
 
 17
 Accordingly, the judgment of the district court is affirmed.
 
 
 18
 AFFIRMED.
 
 
 
 *
 Judge Winter participated in the hearing of this case at oral argument but died prior to the time the decision was filed. The decision is filed by a quorum of the panel. 28 U.S.C.A. Sec. 46(d)
 
 
 [1]
 B & P employee Walter Scott Nall testified that he saw the accident and pulled his truck and lowboy trailer over to the side of the road. Nall testified that a state trooper "asked if ... we could take care of the scene, the problem" and Nall replied "no problem."
 
 
 [2]
 Although not explained to the district court, B & P argues that its purpose in this questioning was to show that a bond was unavailable because C & C Diesel's trucks exceeded Virginia's height restrictions. B & P also sought to show that C & C Diesel did not make a good faith effort to obtain a bond, a point that B & P contends is relevant to punitive damages
 
 
 [3]
 B & P also objects to the jury instructions on punitive damages. However, the record discloses no objection at trial by B & P on the jury instructions. Under Rule 51 of the Federal Rules of Civil Procedure, "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict...."