## CIRCUIT COURT OF FAIRFAX COUNTY

Charles M. Anderson et al.

v.

Dinesh C. Sharma
and Rushmi D. Sharma

June 26, 1995

Case No. (Chancery) 125374

BY JUDGE RICHARD J. JAMBORSKY

In this cause the Court awards compensatory damages to Dinesh C. Sharma and Rushmi D. Sharma from Charles M. Anderson, Mitsuko Anderson, and George J. Viertel, jointly and severally, in the amount of $7,157.53 for fraud. This amount represents a remaining balance of $3,300.00 due on a Note dated June 26, 1990, plus interest at 12% through July 25, 1995, and the return of the $50.00 legal fee paid George J. Viertel.

The Court awards punitive damages against Charles M. Anderson and George J. Viertel, jointly and severally, in the amount of $35,500.00.

The Court awards reasonable attorney fees in the amount of $53,533.00 against Charles M. Anderson, Mitsuko Anderson and George J. Viertel, jointly and severally. (The Court reduced the amount of attorney fees sought by 20%.)

This cause is before the Court on a Bill of Complaint filed by Charles M. Anderson, *pro se*, and Mitsuko Anderson, wife of Charles (hereinafter referred to as the Andersons), and George H. Studds seeking from defendants, Dinesh C. Sharma and Rushmi D. Sharma, wife of Dinesh (herein-

after referred to as the Sharmas), the return of a Promissory Note dated June 26, 1990, in the amount of $7,300.00 marked "satisfied and paid in full as of February 16, 1992." The Bill further requests the Court to direct the Clerk of the Court to mark the Deed of Trust securing the Note as "satisfied." The Bill seeks an award of punitive damages in the amount of $25,000 for "fraudulent misrepresentation and constructive trust."

The Sharmas answered denying the substance of the allegations and by way of further defense alleging that "they were lied to, were conspired against and were deceived" by the Andersons. In addition, the Sharmas filed a Cross-Bill against the Andersons and against George J. Viertel, who was made a cross-defendant. George J. Viertel is an attorney who has frequently represented the Andersons and represents Mitsuko Anderson in this cause. The Sharmas seek compensatory damages from the Andersons and Mr. Viertel, jointly and severally in the amount of $200,000.00 and punitive damages in the amount of $250,000.00 for fraud and intentional infliction of emotional distress. The Sharmas also seek a judgment in the amount of $4,750.00 with interest of 12% plus attorney's fees from the defendants jointly and severally, based on a promissory note executed by Charles M. Anderson on February 16, 1992. Mr. Anderson then filed a Cross-Bill against Douglas S. Mackall, III, which was nonsuited.

There was an *ore tenus* hearing on September 8, 12, 13, 14, 1994. There were no issues out of chancery. During the course of trial, the Sharmas nonsuited their action against George H. Studds. (Contrary to Mr. Anderson's contention, this nonsuit does not operate as a release of the Andersons and Mr. Viertel.)

The *ore tenus* hearing was acrimonious. The evidence on behalf of the Andersons was lengthy and its relevance was questionable as to most of the key issues in this cause. The testimony of the principal parties to the dispute was in direct conflict. In resolving the issues in this cause the Chancellor made a careful review of relevant evidence giving great attention to the credibility of witnesses and their demeanor, and to the arguments of Charles M. Anderson, *pro se*, George J. Viertel, *pro se*, and in his capacity as counsel for Mitsuko Anderson, and to Henry and Douglas Mackall, counsel to the Sharmas.

The issues and the Court's findings are summarized as follows.

1. Addressing the Andersons' allegations in the Bill of Complaint, did Charles M. Anderson and the Sharmas enter into an agreement on February 16, 1992, whereby the Sharmas received $4,000.00 cash in exchange for surrendering their status as a secured creditor of Charles M. Anderson

and Mitsuko Anderson, to become an unsecured creditor of Charles M. Anderson, solely? On this issue the Andersons have the burden of proof by a preponderance of the evidence. The Court finds that, while the Sharmas received a partial payment of $4,000.00 on the original promissory note and execution of another note by Mr. Anderson, there was no valid, arms length agreement that such payment was payment in full or that it was in exchange for giving up what little security the Sharmas had under the original Promissory Note and Deed of Trust. The Andersons failed to prove their allegations by a preponderance of the evidence. The Sharmas defended with clear and convincing evidence of the Andersons' fraud. Accordingly, the Court denies the Andersons the relief sought in the Bill of Complaint and dismisses their claim.

2. Addressing the Sharmas' allegations in the Cross-complaint, did Charles M. Anderson, Mitsuko Anderson and George J. Viertel fraudulently induce the Sharmas to loan the Andersons $7,300.00 on June 26, 1990? On this issue the Sharmas have the burden of proof by clear and convincing evidence. The Court finds that Charles M. Anderson, Mitsuko Anderson, and George J. Viertel fraudulently induced the defendants to loan Charles M. Anderson and Mitsuko Anderson $7,300.00.

3. Did Charles M. Anderson, Mitsuko Anderson, and George J. Viertel upon payment of $4,000 cash to the Sharmas and execution of a promissory note by Charles M. Anderson fraudulently induce the Sharmas to sign a receipt acknowledging that the Andersons' total indebtedness of $7300.00 had been paid in full? On this issue, the Sharmas have the burden of proof by clear and convincing evidence. The Court finds that Charles M. Anderson, in the presence of Mitsuko Anderson and with her assistance fraudulently induced the Sharmas to sign such a receipt in furtherance of the original fraud of June 26, 1990, by Charles M. Anderson, Mitsuko Anderson, and George J. Viertel. The Sharmas did not rely on the fraudulent representation and repudiated their signed receipt.

4. Did George J. Viertel represent the Sharmas as legal counsel at the settlement of the fraudulent loan on June 26, 1990? On this issue, the Sharmas have the burden of proof by clear and convincing evidence. The Court finds that George J. Viertel provided legal service to the Sharmas as part of the fraudulent scheme.

5. Did Charles M. Anderson, Mitsuko Anderson, and George J. Viertel engage in a course of action which intentionally inflicted emotional distress on the Sharmas? On this issue the Sharmas have the burden of proof by a preponderance of the evidence. The Court finds that, while the be-

havior of Charles M. Anderson and George J. Viertel was outrageous, willful, intentional, and malicious, the Sharmas failed to prove that the actions of Charles M. Anderson and George J. Viertel proximately caused them injury and resulting monetary damage.

6..Are the Sharmas entitled to compensatory damages for fraud? Yes. They are entitled to compensatory damages from Charles M. Anderson, Mitsuko Anderson, and George J. Viertel, jointly and severally for the fraud. They have proved actual fraud by Charles M. Anderson and George J. Viertel and constructive fraud by Mitsuko Anderson. Upon payment of the judgment awarded the Sharmas in this opinion, the Note, and Deed of Trust shall be returned to the Andersons and the lien of the Deed of Trust shall be released.

7. Are the Sharmas entitled to punitive damages? Yes. They have proved, by clear and convincing evidence that the actions of Charles M. Anderson and George J. Viertel were taken willfully, intentionally, and with actual malice. Accordingly, the Sharmas are awarded $35,500.00 punitive damages from Charles M. Anderson and George J. Viertel, jointly and severally.

8. Are the Sharmas entitled to attorney fees? Yes, in the amount of $53,533.00.

### Findings of Fact

In June of 1990, Charles M. Anderson represented to the Sharmas that he needed $7,300.00 for payment of real estate taxes or he would be put in jail. He further represented that he would repay the loan pursuant to the terms of a Note and Deed of Trust "within a short time," and that the Sharmas would be secured creditors. When asked by Mrs. Sharma if it were true that Mr. Anderson would be jailed if the taxes were not paid, Mitsuko Anderson nodded her head in assent. These were misrepresentations of material facts, known by the Andersons to be untrue. The Sharmas relied on these misrepresentations to their detriment. The Sharmas wanted Maryland counsel to review the proposed Promissory Note and Deed of Trust, prepared by Charles M. Anderson. Mr. Anderson referred them to George J. Viertel, an attorney who practices in Maryland and Virginia. Mr. Viertel had been Mr. Anderson's attorney in numerous legal proceedings prior to the settlement of the loan transaction and represents Mitsuko Anderson in this action. Settlement occurred in Maryland in the office of George J. Viertel and he was paid $50.00 for "legal fee for preparation of legal documents for a secured loan." He reviewed the documents and the

Sharmas relied on his review of the documents. Mr. Viertel's failure to advise the Sharmas of his professional relationship with the Andersons, his failure to advise them of the inadequacy of the Note and Deed of Trust and his failure to advise the Sharmas of the numerous judgments against Charles M. Anderson and of Mr. Anderson's numerous lawsuits constitute concealment of material facts, relied upon by the Sharmas to their detriment. The Note was due on July 1, 1991. Based on assurances that payment would be soon and at the Andersons' insistence, payment was extended to July 1, 1992. At the time of execution of the Note, Deed of Trust, and extension documents, Charles M. Anderson knew that he was not going to jail for non-payment of taxes and had no intention of repaying the loan pursuant to the terms of the various written documents. Mitsuko Anderson permitted and assented to her husband's misrepresentation and permitted him to speak for her with a reckless indifference as to the truth of her husband's statements. George J. Viertel was the Andersons' attorney at the time the loan was executed and throughout the duration of this proceeding. Not only did he not disclose his conflict with the Sharmas, Mr. Viertel knew that Mr. Anderson had no intention of repaying the loan pursuant to the terms of the various loan documents based on Mr. Viertel's keen awareness of the Andersons' past behavior with numerous creditors, including himself. He later assisted Mr. Anderson in threatening and intimidating the Sharmas in an attempt to obtain release of the deed of trust even though he knew the loan amount had not been paid.

No direct evidence was produced wherein the Andersons and Mr. Viertel proclaimed that they were committing fraud and deceit, but the circumstantial evidence of fraud and deceit is overwhelming.

First, the promissory Note and Deed of Trust prepared by Mr. Anderson and reviewed and approved by Mr. Viertel do not represent an arms length transaction. The terms are outrageously weighted in favor of the Andersons and shock the conscience of the Court. The Note has very limited negotiability. Given the terms of the Note and Deed of Trust the Sharmas would have been unable to successfully collect when the case inevitably landed in Court. The so-called "confession of judgment" provision in the Note of February 16, 1992, did not comply with the Va. Code. All of these findings were supported by the testimony of the Sharmas' expert witness.

Second, this transaction patterns a course of conduct which the evidence establishes that Mr. Anderson has pursued for over ten years and was pursuing as of the date of the *ore tenus* hearing whereby he secures money, goods, and services without paying anything or by paying 25% to 33 1/3%

of agreed value. He readily concedes this. He refuses to pay and forces his creditors to sue. This is done with Mr. Viertel's legal assistance and advice. The value of Mr. Anderson's fraudulent gains over approximately 10 years exceed $220,000.00. There is no reason to believe that his intent in this instance was any different than in the numerous previous cases where he has consistently refused to perform pursuant to obligations. Defendants' exhibit 2 supports this conclusion. The fair and logical conclusion to be drawn from scores of cases in this Circuit alone is that the Andersons had no intention of repaying the debt pursuant to the agreed terms. Their subsequent actions in this transaction simply corroborate this conclusion.

Third, Mr. Viertel was aware of the Andersons' method of operation and the numerous judgments against Mr. Anderson, having represented both Mr. and Mrs. Anderson.

Fourth, while it did not constitute duress in the legal sense, Mr. Anderson's explosive, over-bearing and intimidating demeanor assisted him in perpetuating the fraud over a two year period by repeated promises of payment "very soon." Mr. Anderson has a law degree. Mr. Viertel is a lawyer. The Sharmas are quiet and non-confrontational. The evidence and Mr. Anderson's conduct during this litigation establish that Mr. Anderson, when it suits his purposes, is loud, confrontational and intimidating, all of which aided him in imposing his demands on the Sharmas, particularly on February 16, 1992.

The evidence reveals that one of the reasons Mr. Anderson has been successful in his fraudulent activities over the past ten years is because he has successfully limited liability on judgments to himself alone, excluding his wife, Mitsuko Anderson. His numerous creditors have great difficulty in enforcing their judgments. The Chancellor carefully examined Mrs. Anderson's role in the instant cause. Mrs. Anderson, according to Mr. Anderson, is in poor health. She has lived in this country in excess of 20 years, attends church, shops regularly, and watches television regularly. The evidence reveals that Mitsuko Anderson served as Mr. Anderson's secretary in the family business. On her direct examination, Mrs. Anderson was easily led by her husband into legal and factual conclusions favorable to her husband. On cross-examination and upon examination by the Court it was apparent that she has greater awareness of events around her than her husband represents in this cause. She knew that the loan and Deed of Trust affected her property and were necessary to protect her interest. She was present at each transaction with the Sharmas and actually assented to one misrepresentation and remained silent on others. In Feb-

ruary 1992, she actually made the partial payment of $4,000.00 alleged to be "full payment." She knows her property and described a loss she had sustained on one occasion. It is important to note that there is no evidence that she is now, or has she ever been, a person under a disability. There was no competent evidence that she was incompetent or that she required assistance in managing her affairs. The evidence revealed that she is representing herself in a Prince William County Court proceeding and has filed a demurrer, *pro se*, in this Court as recently as 1992. The evidence shows that over the years, Mrs. Anderson has benefitted from her husband's fraudulent acts just as she attempts to do in the instant case. But in this cause, she affirmatively took part in the initial misrepresentation and knowingly and willingly executed the Note and Deed of Trust, the terms of which indicate fraud. She further knew that Mr. Viertel was her attorney when he represented the Sharmas. Certainly she is guilty of constructive fraud.

George J. Viertel insists that he was merely a Notary for the initial transaction, but the actions belie his words. The Sharmas' testimony contradicts him. The settlement was held in his office and he accepted a check marked "fee." He suggested to the Court that the fee was nothing more than payment for the quick use of his office and he contends that he took the fee because Mr. Anderson told him to do so. The Chancellor simply does not believe that an attorney "rents" his office for a brief interlude for clients to conduct their own business. Nor does this Chancellor believe that attorneys accept fees because a client tells them to do so. The Sharmas wanted a Maryland attorney. Mr. Viertel was this attorney and charged them $50.00 for his service, without informing them that he represented Mr. Anderson, that Mr. Anderson had numerous judgments, that Mr. Anderson had a pattern of not paying for goods, service, or money without a legal fight. He failed to inform the Sharmas that the Note and Deed of Trust provided them with little, if any, protection. His services were essential to Mr. and Mrs. Anderson's fraudulent inducement of the initial loan, and his assistance of Mr. Anderson continued when later, George J. Viertel threatened the Sharmas with imprisonment for not complying with Mr. Anderson's demands.

### Legal Analysis

As stated above, the Court finds Charles M. Anderson, Mitsuko Anderson, and George J. Viertel fraudulently induced the Sharmas to loan the Andersons $7,300.00 on June 26, 1990. Virginia defines fraud as follows:

"One who advances a cause of action for actual fraud bears the burden of proving by clear and convincing evidence: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Evaluation Research Corp. v. Alequin* 247 Va. 143, 148 (1994) (citations omitted). Mr. Anderson intentionally made numerous false representations of material facts with the intent that the Sharmas would be misled. For example, Mr. Anderson represented to the Sharmas that he needed $7,300.00 for real estate taxes or he would be put in jail, that he would repay the loan pursuant to the terms of a Note and Deed of Trust within a short time, and that the Sharmas would be secured creditors. Mr. Anderson knew he was not going to jail for non-payment of taxes and had no intention of repaying the loan pursuant to the terms of the documents. The Sharmas relied on these misrepresentations and were damaged by being without the use of any of their $7,300.00 from June 26, 1990, to February 16, 1992. Clearly, Mr. Anderson committed fraud.

"Concealment of a material fact by one who knows that the other party is acting upon the assumption that the fact does not exist constitutes actionable fraud." *Allen Realty Corp. v. Holbert*, 227 Va. 441, 450 (1984) (citations omitted). "Concealment of a fact that is material to the transaction, knowing that the other party is acting on the assumption that no such fact exists, is as much fraud as if the existence of the fact were expressly denied." *Metrocall of Del. v. Continental Cellular*, 246 Va. 365 (1993) (citations omitted). Mr. Viertel is liable for fraud because he intentionally concealed facts that were material to the transactions at issue and knew the Sharmas acted upon the assumption that no such facts existed. Specifically, Mr. Viertel failed to advise the Sharmas of his professional relationship with the Andersons, failed to advise them of the inadequacies of the Note and Deed of Trust, failed to advise the Sharmas of Mr. Anderson's numerous lawsuits, and failed to advise the Sharmas of the numerous judgments against Mr. Anderson. Mr. Viertel's concealment of the truth is the equivalent of an express denial. The Sharmas relied on these omissions and concealments to their detriment. Thus, Mr. Viertel committed fraud.

Mrs. Anderson did not make the fraudulent statements her husband made, but was present, however, while her husband made them and nodded her head approvingly. She executed the fraudulent loan documents. She handed over the $4,000. Additionally, she permitted her husband to speak for her with a reckless indifference as to the truth of her husband's statements. Thus, it is clear that Mrs. Anderson's silence or nodding of her

head does not absolve her of liability. Mrs. Anderson's concealment of the truth is the equivalent of an express denial. Mrs. Anderson's nodding her head indicates that she was not silent, but affirmatively took part in the misrepresentation.

"Constructive fraud differs from actual fraud in that the misrepresentation of material fact is not made with the intent to mislead, but is made innocently or negligently although resulting in damage to the one relying on it." *Evaluation Research Corp. v. Alequin*, 247 Va. 143, 148 (1994) (citations omitted). "Constructive fraud is a 'breach of legal or equitable duty which, irrespective of moral guilt, is declared by law to be fraudulent because of its tendency to deceive others or violate confidence'." *Webb v. Webb*, 16 Va. App. 486, 491 (1993) (citations omitted). Thus, Mrs. Anderson is liable for constructive fraud even if she negligently or innocently failed to correct her husband's misrepresentations. Once again, Mrs. Anderson's nodding her head demonstrates she intended the party to rely on her husband's misrepresentations.

On February 16, 1992, Mr. Anderson, in the presence of Mitsuko Anderson, and with her assistance, fraudulently induced the Sharmas to sign a receipt in furtherance of the original fraud of June 26, 1990, by Charles M. Anderson, Mitsuko Anderson and George J. Viertel. The receipt acknowledged that the Andersons' debt was paid in full when, in fact, it was not paid in full. The Court finds, however, the Sharmas did not rely on the fraudulent representation and promptly repudiated their signed receipt within minutes of executing it.

In Virginia, when a party discovers he has been fraudulently induced to enter into a contract, he may either rescind the contract or affirm the contract and sue for damages he incurred from the fraud. If the party elects to rescind the contract, he must do so promptly.

> A contract induced by fraud is not void, but voidable at the option of the party injured by the fraud. Upon the discovery of the fraud a party has, as a general rule, the choice of two remedies: He may elect to rescind the contract, if he can restore what he has received in the same state or condition in which he received it . . . or, if he has not paid or given anything, repudiate the contract, and rely, when sued, upon the fraud as a complete defense; or he may elect to retain what he has received under the contract, and bring an action to recover damages for the injury he has sustained from the deceit. *Wilson v. Hundley*, 96 Va 96, 100-101 (1898).

"It is an established doctrine that when a party intends to repudiate a contract on the ground of fraud, he should do so as soon as he discovers the fraud . . . Prompt action is essential when one believes himself entitled to a rescission of a contract." *Wright, Inc. v. Shackleford*, 152 Va. 635, 643 (1929) (citations omitted). "And whenever a party to a contract has a right to elect whether he will avoid it or treat it as a subsisting contract, his action may be manifested by acts as well as words, and, when once made, is final and cannot be retracted." *Campbell v. Building Ass'n*, 98 Va. 729, 734 (1900).

In the instant case, the Sharmas discovered the Andersons' fraudulent conduct shortly after signing the receipt and promptly repudiated the contract by refusing to return the Note and Deed of Trust.

### Damages

In determining compensatory damages, the bottom line is this. As a result of the Andersons' and Mr. Viertel's fraud, the Sharmas were without the use of their $7300.00 from June 26, 1990, until February 16, 1992. They are entitled to interest at 12% for the loss of their money during this time. On February 16, 1992, they received a partial payment of $4,000.00 leaving a balance of $3,300.00 to which they are entitled. They are entitled to interest at 12% per year for the loss of their money through the date of judgment in this cause, July 25, 1995. The Sharmas are also entitled to the return of their $50.00 legal fee. Exhibit 1, attached, explains the interest calculation on the $7,300.00. Compensatory damages total $7,157.53.

The Sharmas testified that they suffered emotional distress from their dealings with the Andersons' and Mr. Viertel. This is understandable, but they offered no competent evidence that their headaches or maladies were caused by these transactions. Nor did they offer competent evidence as to the costs of medical treatment. Accordingly, the Court denies compensatory damages for intentional infliction of emotional distress.

The Sharmas request a judgment on the February 16, 1992, note in the amount of $4,750.00; however, the Sharmas, in effect, repudiated that transaction. Upon returning to their car from the Andersons' home on February 16, 1992, the Sharmas quickly realized that they had only received a partial payment of the $7,300.00 and after almost two years of promises were still not whole. They refused to return the original Note and Deed of Trust which was, in effect, an election to rely on the original instrument and collect their money and repudiate the new note executed

solely by Mr. Anderson. Hence, the request for judgment on the February 16, 1992, Note is denied.

The Court awards punitive damages against Charles M. Anderson and George J. Viertel, jointly and severally, in the amount of $35,500.00. In Virginia, punitive damages are permitted, "only where there is misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others." *Giant of Va. v. Pigg*, 207 Va 679, 685 (1967). "[A]ctual malice may be shown if the defendant's actions were 'prompted by ill will, malevolence, grudge, spite, wicked intention or a conscious disregard of the rights of another'." *Peacock Buick v. Durkin*, 221 Va. 1133, 1137 (1981) (citing *Lee v. Southland Corp.*, 219 Va. 23, 27 (1978)).

Charles M. Anderson and George J. Viertel have threatened the Sharmas with imprisonment. Mr. Anderson has harassed them with hateful telephone calls and made false accusations to employers of the Sharmas. With the assistance of Mr. Viertel, Mr. Anderson filed a fraudulent and frivolous law suit in Montgomery County, Maryland, against the Sharmas during the pendency of this cause. These actions are in addition to their calculating deceit from June 1990 through February, 1992. George J. Viertel actually assisted in the threats to the very clients who had paid him a fee less than two years earlier. The evidence establishes that for over ten years, Mr. Anderson, with Mr. Viertel's advice and assistance, has engaged in a pattern of fraudulently obtaining goods, money and services from innocent merchants, professionals and tradesmen in the Northern Virginia community. The evidence reveals that his dishonest gains exceed $200,000. The conduct is nothing short of outrageous, malicious and willful. Punitive damages are necessary in this cause to punish Mr. Anderson and Mr. Viertel, to cause them to cease their fraudulent activities, and hopefully, to deter them from future fraudulent activities.

The Virginia Supreme Court has held that there is no precise or fixed standard for determining the amount of a punitive damages award: "Nevertheless, the 'amount of punitive damages awarded should bear some reasonable relationship to the actual damages sustained and to the measure of punishment required . . .'." *Philip Morris, Inc. v. Emerson*, 235 Va. 380, 414 (1988) (citation omitted). In *Philip Morris*, the Court found that the jury did not abuse its discretion when it awarded punitives that were 6⅔ and 6½ times the amount of compensatory damages awarded. In *Peacock Buick*, the Virginia Supreme Court upheld a punitive damages award that was three times the compensatory award. Hence, this Court's award of

punitive damages approximately five times greater than the compensatory damages awarded is well within the range permitted by the Supreme Court.

The Court finds the Sharmas are entitled to attorney's fees. The Court's equitable powers permit an award of attorney's fees in a fraud case. "Equity deals with the substance and not the form, and will grant such relief as far as possible by allowing compensation for the damages sustained by reason of the fraud." *Millboro Co. v. Augusta Corp.*, 140 Va. 409, 421 (1924).

"In determining a reasonable fee, the fact finder should consider such circumstances as the time consumed, the effort expended, the nature of the services rendered, and other attending circumstances . . . Ordinarily, expert testimony will be required to assist the fact finder." *Mullins v. Richlands Nat'l Bank*, 241 Va. 447, 449 (1991). In the instant cause, the Sharmas provided expert testimony on the reasonableness of their attorney's fees. The hours and rates are appropriate and fair and reasonable. The work undertaken by Henry and Douglas Mackall has been arduous. They were forced to defend against sometimes bizarre, often frivolous, and frequently vitriolic pleadings. For example, one of Mr. Anderson's pleadings accused the Chancellor of traveling to Richmond to meet with the Chief Justice of the Virginia Supreme Court to discuss Mr. Anderson's cases. The Mackalls were forced to defend themselves against a frivolous, malicious and unfounded complaint lodged against them by Mr. Anderson with the Virginia State Bar as a result of their work in this case. They were forced to set aside a fraudulent default judgment against their clients emanating from this controversy. This conduct by Mr. Anderson suggests the Sharmas will have many difficulties in enforcing this judgment. The attorney's fee awarded is 20% less than requested. The fee is still large, but that is the fault of the Andersons and Mr. Viertel. The evidence reveals that, one of the reasons Mr. Anderson has been successful in his past fraudulent endeavors is because attorneys simply could not afford the time and effort and expense Mr. Anderson's cases require. This equity court would be most inequitable if a substantial award of attorney's fees was not made. Given the unusual and difficult circumstances peculiar to this cause, fair and reasonable attorney fees are, at the least, $53,533.00 . . . .

There is a $350.00 appeal bond for the Sharmas and an appeal bond of $96,190.53 (the amount of the damages awarded and attorney fees) for the Andersons and Mr. Viertel.