## Richmond

### LARRY CORNELL ROBINSON

### V.

### COMMONWEALTH OF VIRGINIA

January 11, 1980.

Record No. 790037.

Present: Carrico, Harrison, Cochran, Harman, Poff and Compton, JJ.

*Denis C. Englisby* (*Nikas, Englisby & Barnes,* on brief), for appellant.

*Richard B. Smith, Assistant Attorney General* (*Marshall Coleman, Attorney General,* on brief), for appellee.

CARRICO, J., delivered the opinion of the Court.

The sole question for decision in this homicide case is whether the defendant was denied a fair trial because of the Commonwealth's failure to disclose requested evidence which the defendant says was "of vital importance" to his plea of self-defense.

The defendant, Larry Cornell Robinson, was tried by a jury in connection with the death of William Joseph Frazier. Convicted of first degree murder and the use of a firearm in the commission of a felony, the defendant was sentenced in accordance with the jury's verdicts to a total of 51 years in the penitentiary.

The record shows that, at the time of the occurrence in question, the victim, Frazier, and his wife, Belinda, were separated. Frazier lived in an apartment in Henrico County; Belinda and the couple's children lived with the defendant in Newburgh, New York.

On March 4, 1977, a female friend of Frazier's arrived at his apartment for a visit. As she approached, she heard from within the apartment the sounds of an argument and a series of gunshots. She knocked on the door, and, in a few seconds, two men, one with his face covered by a "cloth or rag," exited the apartment and ran past her. When she entered, she found Frazier lying on the floor, moaning and unable to speak. He had been shot twice in the back and three times in the front of his body. He soon died from his wounds.

The apartment was in a state of disarray. Stereo components, their wires "apparently ripped out of the wall," were piled in the middle of the living room floor. Another stereo belonging to Frazier was missing, as were his credit cards. No weapon was found in the apartment, and two Commonwealth witnesses familiar wih Frazier testified that he did not possess a firearm.

Almost a year after the shooting, the defendant was arrested for Frazier's murder. In a statement to the police, the defendant admitted that he killed Frazier but claimed that he acted in self-defense.

According to the defendant's testimony at trial, he and his brother, while on a visit to Richmond on the date in question, went to Frazier's apartment in an attempt to induce him to withdraw a custody proceeding he had brought against Belinda. An argument ensued between Frazier and the defendant. Frazier went to a bedroom and secured

a pistol; the defendant, who had followed, withdrew from his pocket a .22 caliber pistol he was carrying.

Frazier pointed his weapon at the defendant and pulled the trigger, but the gun did not fire. The defendant then fired his pistol into a mattress to frighten Frazier. When Frazier again raised his gun, the defendant shot him in the neck. The defendant shot Frazier four more times as he, Frazier, chased the defendant and continued pulling the trigger on his non-firing weapon. As Frazier finally fell to the floor, his gun was grabbed by the defendant, who then fled with it from the apartment and thence to New York.

Approximately two months before trial, defense counsel wrote the Assistant Commonwealth's Attorney assigned to prosecute the defendant. In the letter, defense counsel requested the criminal record of the victim, Frazier. Some time later, defense counsel filed a written motion requesting any exculpatory information and subsequently orally moved the trial court specifically for production of Frazier's record. Pursuant to these requests, the investigating officer checked Henrico County and City of Richmond records, as well as state and national sources, for a criminal history of Frazier. Only minor traffic offenses were reported. Defense counsel was advised accordingly.

Approximately two weeks before trial, defense counsel again wrote the Assistant Commonwealth's Attorney requesting Frazier's criminal record. The assistant checked with his investigating officer and received a negative reply to his query whether anything new had been obtained concerning Frazier's record. In addition, the assistant personally executed and mailed a form requesting Frazier's record from the Central Criminal Records Exchange (CCRE) of the Department of State Police. When a report had not been received by the morning of trial, the assistant so advised defense counsel.

Then, several days after trial, the assistant received the CCRE report. It showed that Frazier had been convicted of assault in the City of Richmond in 1972. The assistant notified defense counsel of the contents of the report. This prompted the filing of a motion for a new trial based upon the Commonwealth's failure to produce before trial the record of Frazier's conviction for assault. Holding that Frazier's record, if produced, could not have "had any effect on the result of the trial," the court below denied the motion.

On appeal, the defendant argues that Frazier's reputation as a violent and turbulent person was the cornerstone of the plea of self-defense and that Frazier's conviction for assault was "of vital importance" in establishing that defense. Yet, the defendant says, even though he specifically requested information concerning Frazier's

record, he was denied the vital evidence of the assault conviction. This denial, the defendant asserts, places his case within the holding of *Brady* v. *Maryland,* 373 U.S. 83 (1963), and requires that a new trial be awarded to correct the deprivation of due process he has suffered.

*Brady* holds that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. See *Stover* v. *Commonwealth,* 211 Va. 789, 795, 180 S.E.2d 504, 509 (1971). "[I]mplicit in the [*Brady*] requirement of materiality," however, "is a concern that the suppressed evidence might have affected the outcome of the trial," and, in determining materiality, the omitted information "must be evaluated in the context of the entire record." *United States* v. *Agurs,* 427 U.S. 97, 104, 112 (1976). See *Dozier* v. *Commonwealth,* 219 Va. 1113, 1116, 253 S.E.2d 655, 657 (1979).

We will assume, without deciding, that the failure of the Commonwealth to discover the information concerning Frazier's conviction for assault and to make it available to the defense before trial constituted "the suppression by the prosecution of evidence favorable to an accused," within the meaning of *Brady.* It does not follow, however, that the defendant is entitled to a new trial because the information was not timely made available to him. The crucial question is whether the information meets the test of materiality enunciated in *Agurs* as applicable to *Brady* material, that is, whether the information "might have affected the outcome of the trial."

It is undisputed that Frazier's conviction for assault resulted from an incident in which he broke the nose of his wife, Belinda. She testified to the incident at trial and, while for some unexplained reason she was not asked whether Frazier had been convicted for assaulting her, she did say that "[i]t's on the record" at the Medical College of Virginia. Belinda's testimony concerning the nose-breaking incident was uncontradicted. Thus, the very violence on the part of Frazier that precipitated his conviction for assault was shown by a live witness, the actual victim of the assault. To have produced before the jury the record of Frazier's conviction for the assault would not have enhanced the violent nature of his conduct or added anything of substance to his reputation for violence and turbulence.

Furthermore, there was other uncontradicted evidence concerning Frazier's reputation for violence and turbulence. Belinda testified that she had twice heard Frazier threaten the defendant that he would kill him. In addition, another witness related a similar threat by

Frazier against the defendant.

We do not believe, therefore, that the evidence of Frazier's conviction for assault, when evaluated in the context of the entire record, "might have affected the outcome of the trial." Indeed, it can be said safely in this case that, even if the evidence concerning Frazier's record had been added to what the jury heard, only one fair and reasonable verdict would have been justified. The jury reached that verdict. Accordingly, the judgments of the trial court will be affirmed.

*Affirmed.*