### Richmond

EMERSON EUGENE STEVENS

v.

COMMONWEALTH OF VIRGINIA

No. 1124-86-2

Decided March 21, 1989

COUNSEL

James W. Parker (Parker and Hunter, on brief), for appellant.

Linwood T. Wells, Jr., Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BARROW, J.**—The defendant appeals convictions of first degree murder and abduction with intent to defile, asserting five errors, including insufficiency of the evidence. We conclude, for the reasons stated in this opinion, that the convictions should be affirmed.

## I. *Sufficiency of the Evidence*

The victim's body was found on August 27, 1985 in the Rappahanock River. A cinderblock was tied to her neck by a rope and chain. Her body was cut in six or seven places, but death was caused by asphyxiation, resulting from the rope wrapped around her neck. The time of death could not be precisely determined. Her body had been in the water for several days, and the medical examiner concluded that she died or "suffered some extreme incident that caused digestion to quit within two or three hours" of a meal. She had eaten dinner at her grandmother's home at approximately 7:00 p.m. on August 22, 1985, and she disappeared that same night. Thus, the Commonwealth concludes that death occurred sometime after 10:00 p.m. on the night of August 22, 1985.

The evidence supporting the defendant's conviction is entirely circumstantial. Therefore, all of the necessary circumstances proved must be consistent with guilt and inconsistent with innocence; they must exclude every reasonable hypothesis of innocence; the chain of these circumstances must be unbroken; and the "circumstances of motive, time, place, means, and conduct must all concur to form an unbroken chain" linking the defendant to the crime beyond a reasonable doubt. *Bishop v. Commonwealth*, 227 Va. 164, 169, 313 S.E.2d 390, 393 (1984); *Stover v. Commonwealth*, 222 Va. 618, 623, 283 S.E.2d 194, 196 (1981); *Inge v. Commonwealth*, 217 Va. 360, 366, 228 S.E.2d 563, 567-68 (1976). Our analysis of the chain of circumstances leads us to conclude that the Commonwealth has met its burden of proving the defendant's guilt beyond a reasonable doubt.

## A. *Motive*

There was little evidence that the defendant had a motive to murder the victim. There was evidence of some sexually suggestive remarks by the defendant about the victim. The defendant's brother-in-law testified that "sometime back" he and the defendant had a conversation about the victim during which the defendant said, "I sure would like to get some of that stuff" and "that sure is a good looking woman, that Mary Harding." On cross-examination he said that the statements were not made recently but were made "four or five months ago or something like that." Two Sundays before the victim disappeared, her husband was fishing with some other people in a boat at a place called "Mary's Hole" (the victim's first name was Mary). The defendant, with two other people, approached in another boat and, while laughing, told the victim's husband, "you know this place real good."

There was no affirmative evidence of any sexual assault or of any sexual relationship between the defendant and the victim. The medical examiner was unable to conclude because of the body's decomposition whether she had any sexual injury.

## B. *Time and Place*

The evidence indicates that the defendant was near the victim's home about the estimated time of her death on the night of her disappearance. At about 9:50 p.m. of the evening the victim disappeared, a witness returning to his home from work saw the defendant's truck parked about 250 feet west of the victim's house. Upon being questioned by the police concerning the presence of his truck near the victim's home at the time she disappeared, the defendant initially and repeatedly denied his truck was there. However, he finally told the police that his truck was there that particular night. He said that after he left the "Walkers' house" with his three children, he went to visit his sister and brother-in-law; that when he "got to this vicinity," he pulled his truck off of the shoulder of the road, stepped out of it, and relieved himself. He got back into his truck and went on to his sister and brother-in-law's home where he visited for approximately an hour. He later admitted that this explanation he gave about visiting his brother-in-law and sister was false.

During the early morning following the victim's disappearance, the defendant was seen near the location where her body was found. A witness who kept his boat at the dock where the defendant kept his, testified that at 3:30 a.m. on August 23, 1985, the defendant's boat was not there and that he saw the defendant's boat coming into Whitehouse Creek, where the dock was located, at about 4:00 a.m. The wife of this same witness who lives near the dock saw the defendant that morning at about 6:40 a.m. returning home in his white truck.

## C. *Means*

On the defendant's boat there were fragments of rope described as "small twine like a thread . . . used for a technique called whipping a rope to keep the ends together." The police investigator who found the fragments said this "whipping material was similar to the rope found on the victim," but acknowledged that it was not unusual to find rope of that type on boats. A waterman who had worked on the defendant's boat during the summer the victim disappeared said that, prior to the disappearance, the defendant's truck was dirty and that it "had everything in the back of it." He said this included rope, chain and a knife. He added that after the disappearance "[a]ll of it was gone." He said that the truck had been "cleaned up real nice."

An acquaintance of the defendant's testified that on August 8, 1985 he was with the defendant in the defendant's truck when they assisted a disabled automobile. He said that he saw a chain in the defendant's truck which he said looked like the chain found on the victim's body and added "if it ain't the chain it's the twin of it." He also said that there was rope in the back of the truck and that a knife was taken from the truck's dashboard to cut the rope. He said the knife was in a case.

After the murder, an investigator found a knife sheath on the truck's dashboard. The sheath corresponds to a particular kind of knife called a "Wildcat Skinner," which is the kind of knife that the defendant's acquaintance had seen in the defendant's truck. However, when the investigator confronted the defendant, he denied ever having a knife of that description. The medical examiner described the victim's injuries as consistent with the injuries that a "Wildcat Skinner" knife would inflict.

### D. *Conduct*

The defendant's conduct also indicates his involvement in the crime. A witness saw his truck near the victim's home on the evening she disappeared. The defendant first denied this and then gave a false explanation for its presence. Furthermore, his boat was not in its slip at 3:30 a.m. on the night the victim disappeared but was seen returning about a half an hour later. His truck was then seen going toward his home and away from the dock at 6:40 a.m. that same morning. At that time he was seen wearing a plaid shirt. The police later found a plaid shirt in his truck. On the shirt they found a hair identified as being microscopically alike in all identifiable characteristics as the victim's hair. The examiner said the hair could have come from the victim but could not conclusively trace it to the victim. The defendant's truck was cleaned and chain, rope and knife were missing from it following the victim's disappearance. When confronted by the police about the knife, the defendant began "shaking all over . . . both hands were shaking so bad he had to put them in his pockets."

### E. *Applicable Law*

Although the rule as to cases based entirely on circumstantial evidence is that necessary circumstances must be consistent with guilt and inconsistent with innocence, all of the circumstances of time, place, motive, means and conduct do not have to be proved beyond a reasonable doubt in every case. *See Cantrell v. Commonwealth*, 229 Va. 387, 398, 329 S.E.2d 22, 29 (1985); *McGee v. Commonwealth*, 4 Va. App. 317, 322, 357 S.E.2d 738, 740 (1987); *Mullis v. Commonwealth*, 3 Va. App. 564, 575-76, 351 S.E.2d 919, 926 (1987). Motive, for example, need not always be proved. *Cantrell*, 229 Va. at 398, 329 S.E.2d at 29. Therefore, the lack of evidence of motive in this case is not crucial.

The test instead is whether the circumstances which are proved concur in pointing to the defendant's guilt beyond a reasonable doubt. *Id*. When viewed in the light most favorable to the Commonwealth the evidence in this case is as follows: the victim died sometime after 10:00 p.m., August 22, 1985; the defendant's truck was seen parked about 250 feet from her home at about 9:50 p.m. that same evening; upon being questioned by the police he admitted that his truck was there only after first repeatedly denying it;

the defendant's boat was not at its usual location at 3:30 a.m. the following morning but was seen coming back toward that location at about 4:00 a.m.; the defendant himself was seen driving away from that dock at about 6:40 a.m. in his truck wearing a plaid shirt; a plaid shirt was later found by police in his truck containing a hair microscopically identical to the victim's hair; fragments of small twine similar to twine found on the victim were found on the defendant's boat; the chain found on the victim's body was described as identical to a chain previously seen in the defendant's truck; a knife identified as one seen in the defendant's truck prior to the victim's disappearance, but which the defendant denied having, was capable of inflicting the victim's injuries; the defendant's truck was, prior to the victim's disappearance, dirty and had "everything in the back of it," including rope, chain and a knife, but was clean and missing those items after the victim's disappearance; the defendant, in addition to first denying that his vehicle was parked in the vicinity of the victim's home on the night of her disappearance, gave a false explanation for its presence there; he denied ever having had the knife identified as being in his truck prior to the victim's disappearance; he denied that his boat had been away from its dock in the early morning hours following the victim's disappearance; and the body was found in the Rappahanock River approximately twenty miles from Tappahanock. We find that these circumstances do concur to form an unbroken chain linking the defendant to the crime and, therefore, the jury could have determined his guilt beyond a reasonable doubt.

## II. *Commonwealth's Closing Argument*

The defendant also contends that the Commonwealth's attorney made inappropriate comments during his closing argument. However, the defendant did not object to these statements at trial. Therefore, since no good cause for doing so has been shown and since it is not necessary to enable us to attain the ends of justice, we conclude that his untimely objection cannot now be considered as a basis for reversal. Rule 5A:18; *see also Mounce v. Common-*

*wealth*, 4 Va. App. 433, 435, 357 S.E.2d 742, 744 (1987).

### III. *Exculpatory Evidence*

The defendant also asserts that the Commonwealth failed to disclose certain exculpatory information. He acknowledges that he obtained this information from two of the Commonwealth's witnesses between the first trial, which resulted in a mistrial, and a second which resulted in his conviction. Therefore, there is no indication that he was prejudiced by the Commonwealth's failure to produce the information. Furthermore, there is no indication of a post-trial motion or any other objection raising this issue before the trial court. Therefore, we find no basis for reversal. *See Robinson v. Commonwealth*, 220 Va. 673, 676, 261 S.E.2d 318, 320 (1980).

### IV. *Recusal*

The defendant contends that the trial judge should have disqualified himself due to bias. He based this argument on the "court sustaining two out of the defendant's thirty-eight objections in the first trial," the court's failure to sustain the defendant's two motions to strike at the first trial, and the court incarcerating the defendant and increasing his bond following the mistrial. He now also contends that this bias was demonstrated by further adverse rulings at the second trial. From our review of the record, we conclude that these rulings do not indicate any personal bias against the defendant. We find no basis for reversal. *See Stamper v. Commonwealth*, 228 Va. 707, 714, 324 S.E.2d 682, 686 (1985).

### V. *Jury Instructions*

The defendant also contends that the court erred in refusing his proposed instructions as to his character and as to the burden of proof. The trial court did refuse such instructions, but it granted instructions from the Commonwealth and from the defendant which substantially covered the same subject matter. Therefore, we find no error. *See Johnson v. Commonwealth*, 2 Va. App. 447, 457, 345 S.E.2d 303, 309 (1986).

*Affirmed.*

Cole, J., and Coleman, J., concurred.