COURT OF APPEALS OF VIRGINIA


Present:  Judges Kelsey, Petty and Senior Judge Bumgardner


WILLIAM BOWLES

                                                          MEMORANDUM OPINION[*]
v.      Record No. 0048-09-2                                      PER CURIAM
                                                              JULY 13, 2010
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF ORANGE COUNTY
                            Daniel R. Bouton, Judge

            (Christian A. Brashear, on briefs), for appellant.  Appellant
            submitting on briefs.

            (Kenneth T. Cuccinelli, II, Attorney General; Leah A. Darron, Senior
            Assistant Attorney General, on brief), for appellee.  Appellee
            submitting on brief.


        Following a jury trial, William Bowles (appellant) was convicted of grand larceny, in

violation of Code § 18.2-95; two counts of breaking and entering, in violation of Code § 18.2-91;

two counts of larceny of a firearm, in violation of Code § 18.2-95; petit larceny in violation of Code

§ 18.2-96.2; and destruction of property in violation of Code § 18.2-137.  On appeal, appellant

contends the trial court erred in concluding the evidence was sufficient to convict him.  Appellant

further asserts the trial court erred in (1) denying his motion for mistrial, and instead, simply

instructing the jury to disregard the testimony of Nikki Exline; (2) issuing a jury instruction on

flight; and (3) failing to grant his motion to suppress evidence police officers recovered from his

shed because the search exceeded the permission received from appellant's wife.  For the following

reasons, we affirm appellant's convictions.

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

"On appeal, we view the evidence in the light most favorable to the Commonwealth and grant to it all reasonable inferences therefrom." Barlow v. Commonwealth, 26 Va. App. 421, 428-29, 494 S.E.2d 901, 904 (1998). So viewed, the evidence established that in the early evening hours of January 6, 2005, Dale and Nancy Stanley left their home. When they returned around 9:30 p.m., the Stanleys discovered two windows were broken and the lock to the back door had been drilled, resulting in $400 in property damage. Their home had been ransacked, and $260 in cash, $100 in gift cards, a .32 caliber Davis automatic pistol in a nylon camouflage holster, and several shotguns and knives were missing. The Stanleys notified the Orange County Sheriff's Department, and provided them with serial numbers and descriptions of the stolen firearms.

Appellant lived near the Stanleys' home. On January 9, 2005, sheriff's deputies visited appellant's home to arrest him on other charges. Appellant's wife, Bridget Bowles, gave police officers consent to search the home for appellant. While searching for appellant in the house, officers noticed smoke coming from the chimney of a shed in the backyard. Bowles gave officers permission to search for appellant in the shed.[1] While searching for appellant, the officers discovered a gun case and several guns. Some of the guns looked similar to those reported as stolen by the Stanleys three days earlier. A drill with metal shavings was also found in appellant's shed. After discovering these items, sheriff's officers received additional written permission from Bowles to search for stolen property. During the second search, officers found another firearm, a large quantity of deer burgers in the freezer, and a black bag of carpentry tools hanging on the wall.

---

[1] The shed was set up like an apartment, complete with a bed, table, and refrigerator.

On January 28, 2005, Officer Tidwell visited the home of Clyde Williams, who also lived near appellant and the Stanleys. Williams had been away at the time the Stanleys' home had been burglarized. Williams told Tidwell that he was missing two hundred pounds of deer burgers from his shed. Upon hearing this, Tidwell remembered the deer burgers he had seen in the freezer in Bowles' shed when he had been searching for stolen property. Tidwell also asked if Williams was missing a drill; Williams checked his drill case and discovered his drill was missing. Williams then discovered he was missing a .38 caliber pistol he received from his stepfather over thirty-five years earlier, a Browning shotgun with a gold trigger, and his carpentry tools.

During their investigation, sheriff's officers learned appellant was living in Mobile, Alabama. Cooperating with Virginia authorities, Alabama State Trooper Terry Howell conducted a search of appellant's home in Mobile in August 2005. Howell recovered a large duffel bag full of clothes, appellant's wallet, and a nylon camouflage pistol holster that looked exactly like the one that contained the pistol stolen from the Stanleys' home in January 2005.

At trial, Bowles testified that appellant, her husband of eight years, was cheating on her and had moved out on November 28, 2004. She stated that he came home for one night on December 24, 2004, and she saw him again on January 8, 2005. On January 8, appellant told Bowles he had been robbing houses. Bowles gave appellant a blanket to sleep on in the shed and informed him that she wanted all stolen goods removed from their property.[2] Bowles said the police officers searched their home and shed the following day, and appellant returned to the shed after it had been searched.

---

[2] Another witness also testified that she spoke with appellant at a restaurant in Fredericksburg on January 8 or 9, 2005.

Appellant testified on his behalf. He denied committing the offenses or knowing anything about the stolen property in his shed.[3] By its verdict, the jury disbelieved appellant's testimony and convicted him on all charges except possession of burglary tools. The trial court sentenced appellant to seven years imprisonment. This appeal followed.

## II. ANALYSIS

## Sufficiency of the Evidence

Appellant contends the evidence was insufficient to convict him of the following charges against Dale and Nancy Stanley: grand larceny, larceny of a firearm, breaking and entering, and destruction of property. Appellant further contends the evidence was insufficient to convict him of the following charges against Clyde Williams: petit larceny,[4] larceny of a firearm, and breaking and entering.

> Where the sufficiency of the evidence is challenged after conviction, it is our duty to consider it in the light most favorable to the Commonwealth and give it all reasonable inferences fairly deducible therefrom. We should affirm the judgment unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.

Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

Here, Dale and Nancy Stanley testified that on January 9, 2005, they returned home and discovered their home had been burglarized. The Stanleys testified that the nylon camouflaged holster found with appellant's wallet and belongings in Mobile looked like the holster that was

---

[3] He also indicated that his teenage children and their friends had access to the shed.

[4] In his brief, appellant argues the evidence was insufficient to convict him of grand larceny. This charge was reduced to petit larceny by the trial court. As this discrepancy does not affect the disposition of this case, we address whether the evidence was sufficient to convict appellant of petit larceny.

missing from their house.[5] In the course of their investigation, sheriff's deputies discovered several weapons in appellant's shed. One of the firearms recovered from appellant's shed bore the serial number of a firearm missing from the Stanleys' home. A certificate of analysis also established that the drill bit recovered from the drill found in appellant's shed was the same drill bit used to drill holes in the Stanleys' door.

The evidence also established that two hundred pounds of deer meat was stolen from Clyde Williams' property. Williams identified the uniquely packaged meat in appellant's freezer as the meat stolen from his home. He also identified one of the guns found hidden underneath a chair cushion in appellant's shed as a pistol missing from his home, and another as the 20-gauge Browning shotgun he received from his stepfather thirty-five years earlier.

In addition to the positive identification of several of the recovered items by the Stanleys and Williams, Bowles testified that she saw appellant in their shed the night before the sheriff's deputies searched it, and appellant admitted to her that he had broken into his neighbors' homes and stolen property from them.

Despite all of the evidence linking appellant to the crimes against Williams and the Stanleys, appellant contends he did not commit the crimes and that the evidence was insufficient to convict him because no one saw him commit the crimes or place the stolen items in his shed. However, the Supreme Court has previously stated, "[t]here is no distinction in the law between the weight or value to be given to either direct or circumstantial evidence. The finder of fact is entitled to consider all of the evidence, without distinction, in reaching its determination." Commonwealth v. Hudson, 265 Va. 505, 512-13, 578 S.E.2d 781, 785 (2003). From this circumstantial evidence, we cannot conclude the jury was plainly wrong in finding the evidence

---

[5] Nancy Stanley testified that she could identify the holster because it had a long strap and "it [] irritated me because it always kept curling up and I always kept pushing it down."

sufficient to convict appellant of grand larceny, two counts of breaking and entering, two counts of larceny of a firearm, petit larceny, and destruction of property.

<u>Denial of Appellant's Motion for Mistrial</u>

At trial, Nikki Exline, appellant's ex-girlfriend, testified that appellant was in Orange County when the relevant offenses took place. Her testimony contradicted appellant's alibi that he was in Mobile at the time. Appellant moved for mistrial on the grounds that the Commonwealth failed to timely notify appellant that it planned to call Exline as a witness or inform him Exline had a criminal record for a crime of moral turpitude. The trial court determined appellant was prejudiced by Exline's testimony, but rather than declare a mistrial, it instructed the jury to disregard Exline's testimony. Appellant contends Exline's testimony was clearly prejudicial and the trial court erred in failing to declare a mistrial.

"When a motion for mistrial is made, based upon an allegedly prejudicial event, the trial court must make an initial factual determination, in the light of all the circumstances of the case, whether the defendant's rights are so 'indelibly prejudiced' as to necessitate a new trial." <u>Spencer v. Commonwealth</u>, 240 Va. 78, 95, 393 S.E.2d 609, 619 (1990) (quoting <u>LeVasseur v. Commonwealth</u>, 225 Va. 564, 589, 304 S.E.2d 644, 657 (1983)). "The remedial relief to be granted by the trial court following a discovery violation or upon the late disclosure of evidence is within the trial court's discretion and will not be disturbed on appeal unless plainly wrong." <u>Moreno v. Commonwealth</u>, 10 Va. App. 408, 420, 392 S.E.2d 836, 844 (1990).

The trial court heard extensive arguments from counsel regarding the potential prejudice appellant may have experienced due to the Commonwealth's failure to notify the appellant of its intention to call Exline as a witness. It concluded that Exline's testimony regarding a prior conviction for a crime of moral turpitude, as well as her potential bias against appellant due to

their failed relationship, required some remedy but that declaring a mistrial would not be "appropriate or fair."

"[I]t is always presumed that a jury followed an explicit cautionary instruction promptly given, unless the record clearly shows that the jury disregarded it." Spencer, 240 Va. at 95, 393 S.E.2d at 619. Here, the trial court instructed the jury that "Ms. Exline's testimony should not be admissible in connection with this [] trial . . . . It is not evidence in this case, and you must not consider any testimony that she gave in connection with this case as evidence in any way, shape or form."[6] There is no evidence in the record that the jury disregarded the court's instructions. Therefore, we cannot conclude the trial court's failure to grant a mistrial was plainly wrong, and we affirm the ruling of the trial court.

Issuance of a Jury Instruction on Flight

The trial court instructed the jury: "[I]f a person flees to avoid prosecution, flees to avoid detection, apprehension or arrest, this creates no presumption that the person is guilty of having committed the crime; however, it is a circumstance which you may consider along with the other evidence." Appellant contends the trial court erred in giving the jury an instruction on flight because there was no evidence appellant fled the Commonwealth to avoid apprehension or prosecution.

---

[6] Although the Commonwealth violated the discovery order in failing to disclose Exline's criminal record prior to trial, the Supreme Court and this Court have consistently held that when a witness' criminal history is disclosed in time for the witness' prior conviction to be used as impeachment evidence, no violation of Brady v. United States, 397 U.S. 742 (1970), has occurred. See, e.g., Bramblett v. Commonwealth, 257 Va. 263, 276-77, 513 S.E.2d 400, 408-09 (1999); Robinson v. Commonwealth, 220 Va. 673, 675-77, 261 S.E.2d 318, 319-20 (1980); Johnson v. Commonwealth, 41 Va. App. 37, 44-46, 581 S.E.2d 880, 884 (2003); Jones v. Commonwealth, 32 Va. App. 30, 45-46, 526 S.E.2d 281, 288-89 (2000); Moreno, 10 Va. App. at 420, 392 S.E.2d at 844. Here, Exline's prior convictions were discovered at a point in the trial where they could have been used to impeach her. Moreover, appellant limited his argument to whether the trial court erred in failing to grant a mistrial, and does not allege that a Brady violation occurred.

- 7 -

"[A] well-established principle in this Commonwealth is that a suspect's acts to escape, or evade detection or prosecution for criminal conduct may be evidence at a criminal trial, and a jury may be instructed that it could consider such acts." Turman v. Commonwealth, 276 Va. 558, 565, 667 S.E.2d 767, 770 (2008). "However, jury instructions are proper only when supported by the evidence." Commonwealth v. Leal, 265 Va. 142, 145, 574 S.E.2d 285, 287 (2003). "A jury instruction may not be submitted to the jury unless 'the evidence asserted in support of such an instruction . . . amount[s] to more than a mere scintilla.'" Turman, 276 Va. at 565, 667 S.E.2d at 770 (quoting Porter v. Commonwealth, 276 Va. 203, 241, 661 S.E.2d 415, 434 (2008)).

Here, the evidence established appellant left the home he shared with his wife in late November 2004. He testified that he arrived in Alabama sometime between December 10 and 15, 2004. Although appellant claims he left the Commonwealth solely because he was having marital problems, the Commonwealth presented evidence that disputes his claim. Specifically, appellant's wife testified that she spent time with appellant in Front Royal the week before Valentine's Day 2005, and appellant gave her a Valentine's Day card and a stuffed animal for the wife's daughter. Additionally, while appellant was in Alabama, he instructed his wife to send him money orders using different names. He also admitted that he planned to stay away until the present legal matter was resolved. From this evidence, we cannot conclude the trial court gave the jury an instruction on flight without the requisite level of evidence necessary to support the instruction.

Denial of Appellant's Motion to Suppress Evidence Discovered in Appellant's Shed

Appellant contends the trial court erred in failing to grant his motion to suppress evidence sheriff's deputies recovered from the shed behind his home because the search exceeded the

scope of permission they received from his wife.  He contends the officers searched places in the shed where no person could hide.

"In reviewing a trial court's denial of a motion to suppress, 'the burden is upon [the defendant] to show that the ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (*en banc*) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)).  "In so doing, we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom."  Watkins v. Commonwealth, 26 Va. App. 335, 349, 494 S.E.2d 859, 866 (1998).  Furthermore, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers."  McGee, 25 Va. App. at 198, 487 S.E.2d at 261.  "However, we consider *de novo* whether those facts implicate the Fourth Amendment and, if so, whether the officers unlawfully infringed upon an area protected by the Fourth Amendment."  McNair v. Commonwealth, 31 Va. App. 76, 82, 521 S.E.2d 303, 306 (1999) (*en banc*).  "A consensual search is reasonable if the search is within the scope of the consent given."  Grinton v. Commonwealth, 14 Va. App. 846, 850, 419 S.E.2d 860, 862 (1992).

Here, appellant's wife granted police officers permission to search for appellant in a shed behind their home.  Deputy Murphy testified that he and the other deputies limited their search to "anywhere a man could be hiding . . . ."  While in the shed, the deputies saw a closed gun case lying across a chair.  The gun case was similar in appearance to a gun case that had been reported stolen.  When one of the officers looked under a workbench, he saw a shotgun also believed to be stolen.  Officers also viewed an electric drill with metal shavings on the drill bit.  After

determining appellant was not present in the shed, Murphy left the shed and received written permission from appellant's wife to search for stolen property.

Although appellant disputes whether a person could have been hiding under the mattress of a bed where the deputies found a rifle matching the serial number of the rifle Dale Stanley reported as missing, by its ruling, the trial court believed the testimony of Murphy and Deputy Tidwell that the deputies limited their search to places where a person could be hiding, and were searching for appellant when they looked under the bed. From the record before us, we cannot conclude the trial court was plainly wrong in believing the deputies' testimony. As such, we conclude that the deputies' first search of the shed was within the scope of consent originally given by appellant's wife and that the subsequent search for weapons was within the scope of consent the appellant's wife gave the deputies after they concluded appellant was not hiding in the shed.

### III. CONCLUSION

For the reasons stated above, we affirm appellant's convictions.

<u>Affirmed.</u>